IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | CASE NO.: 1: 23 CR 457 |
| v. | ) ) ) | JUDGE DAVID A. RUIZ |
| BRIAN JOHNSON, | ) ) ) | |
| Defendant. | ) | |

MOTION TO REVOKE DETENTION ORDER (DOC. 58)

Defendant Brian Johnson, through counsel, and pursuant to Title 18 U.S.C. §3145(b) and Federal Rule of Criminal Procedure 59(a), respectfully moves this Honorable Court to revoke the detention order issued on October 13, 2023 (Doc. 58) and to order his release on bond to the custody of his fiancée Kadeisha Larry and to impose the conditions of home detention with electronic monitoring, substance abuse assessment and treatment and mental health assessment and treatment. These conditions are adequate to reasonably assure the safety of the community.

 A. <u>Introduction</u>

This investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") involved the alleged sale of firearms to undercover ATF agents. Brian Johnson was charged by indictment filed on August 23, 2023. Count I charges a conspiracy to engage in the business of importing, manufacturing or dealing in firearms without a license during the period from July 24, 2023 through August 22, 2023. The conspiracy count alleges Mr. Johnson sold two (2) firearms on July 24, two (2) firearms on July 25,

three (3) firearms on July 27, four (4) firearms on August 7, three (3) firearms on August 8, five (5) firearms on August 9 and one (1) firearm on August 16. Count 3 charges Mr. Johnson with engaging in the business of importing, manufacturing or dealing in firearms without a federal firearm license based upon the July 24 through August 9 alleged transactions. Count 8 charges Mr. Johnson with conspiracy to engage in firearms trafficking. Count 9 charges Mr. Johnson with firearms trafficking based upon the July 24 through August 9 alleged transactions. Counts 17, 18, 20, 31, 32, 33, 34, and 36 charge Mr. Johnson with being a felon in possession of a firearm based on the July 24 through August 9 transactions, Counts 35 and 37 each charge Mr. Johnson with distribution of methamphetamine on August 8, 2023 and August 10, 2023, respectively, in violation of Title 21 U.S.C. §841(a)(1) and 841(b)(1)(B).

The offenses with which Mr. Johnson is charged are *not* crimes of violence, and Mr. Johnson is *not* charged with using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime, or with possessing a firearm in furtherance of any such crime in violation of Title 18 U.S.C. §924(c). Moreover, there was no evidence presented at the hearing that Mr. Johnson simultaneously possessed a controlled substance and a firearm in his interactions with the undercover agents.

Title 18 U.S.C. §3142(f)(1)(C) which requires the Court to hold a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community upon motion of the government in a case that charges an offense for which a maximum term of imprisonment of 10 years or more is proscribed in the Controlled Substances Act, Title 21 U.S.C. §§801 *et seq*. At Mr. Johnson's arraignment on October 6, 2023, the

2

government moved for detention under Section 3142(f)(1)(C) based upon the drug distribution charges at Counts 35 and 37. None of the remaining charges against Mr. Johnson authorize the Court to conduct a detention hearing.

B.  The Detention Hearing

The detention hearing proceeded on October 11, 2023. The government proffered the indictment and the Pretrial Services Report containing a summary of Mr. Johnson's criminal history. The government did not present any testimony or proffer any other facts. Significantly, the government did not present any evidence that Mr. Johnson was in possession of a firearm or drugs upon his arrest on October 6, 2023 or that he would currently have any further access to firearms or controlled substances following his arrest.

Mr. Johnson proffered information on his history and characteristics and submitted multiple letters of support from his family and friends (Exhibits 1-2, 5-7). He is 43 years old and lifelong resident of the community. He has a large family in the Cleveland area, all of whom support him. (Doc. 60, Tr. at Page ID# 258). Brian assists his mother, who had open heart surgery and suffered a stroke, with her daily living needs, cleaning and shopping. *Id.* Brian and his fiancée, Kadeisha Larry, have been together for 20 years and have lived together for 5 years. Ms. Larry has agreed to accept custody and supervision of Brian and to report any violations of the conditions of release to the Court. (Doc. 60, Tr. at Page ID# 259). Brian has 7 children, all of whom but one live in the Cleveland area. He has a five-year old son who has severe separation anxiety and adjustment disorder. (Doc. 60, Tr. at Page ID# 259-260). Brian cares for him, takes him to his medical and mental health appointments and spends time with him daily. His mother does not have family in the area and has no support in the care of their son other

3

than Brian. (Doc. 60, Tr. at Page ID# 260). Brian submitted evidence that he is family oriented and has incredible family support.

Mr. Johnson also submitted evidence of his stable full-time employment with McDade Cleaning and Sanitation Services and his strong work ethic (Exhibit 3, Articles of Organization; Exhibit 4, Forms 1099 for 2021 and 2022; Exhibit 5, Eiahnna Pique-Winters letter). Mr. Johnson has also been known to give his clothes and shoes to homeless people. (Exhibit 5, Eiahnna Pique-Winters letter).

C.      The Detention Order

The Detention Order was entered on October 13, 2023. The Magistrate Judge noted that Mr. Johnson has a lengthy criminal history and a history of supervised release violations. As to the nature and seriousness of any danger to any person or the community that would be posed by his release, the Magistrate Judge noted that, given the indictment, there is probable cause to believe that he trafficked over 20 firearms, including a machine gun and weapons that were stolen or which had obliterated serial numbers and that he sold approximately 900 grams of methamphetamine. (Doc. 58-1, Addendum to Detention Order at Page ID# 243).

The Magistrate Judge found that there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that Mr. Johnson committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*. Given Mr. Johnson's presentation regarding his history and

characteristics, the Magistrate Judge found that he rebutted the presumption of detention. (Doc. 58-1, Addendum to Detention Order at Page ID# 243).

However, the Magistrate Judge erroneously found that the government carried its burden. *Id*. In doing so, the Magistrate Judge relied upon the allegations of the indictment that Mr. Johnson "personally sold *over* 20 firearms, including a machine gun and weapons that were stolen or which obliterated serial numbers." *Id*. at Page ID #244. (emphasis added). The indictment does not allege that Mr. Johnson sold more than 20 firearms. (Doc. 1, Indictment). The Magistrate Judge also noted that Mr. Johnson "also sold nearly a kilogram of methamphetamine in two transactions." (Addendum to Detention Order, Doc. 58-1, Page ID# 244). The Order further states, quoting *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir.), *cert denied*, 562 U.S. 978 (2010), that "'drug trafficking is a serious offense that, in itself, poses a danger to the community.'" *Id*. Citing *United States v. Carnes*, 308 F.3d 950, 957 (6th Cir. 2002), the Order also states that "offenses involving weapons are considered inherently dangerous" and "[g]iven the number and types of weapons involved, the circumstances are particularly serious." *Id*. The Order erroneously suggests that Mr. Johnson simultaneously possessed a firearm and a controlled substance by stating that "mixing weapons and drugs is a particularly deadly combination." *Id*.

The Magistrate Judge also disregarded Mr. Johnson's stable employment history and found that his family support does not "mitigate the risk that Defendant's release would pose to others." Id. The Order also concludes that Mr. Johnson's history of supervised release violations and prior convictions for contempt of court (a 4th degree misdemeanor) and escape (a 5th degree felony under Ohio law which is not a felony for

5

federal purposes) "raise[] concerns about [his] willingness to comply with any condition of release that the court might impose and his willingness to act in a manner that would not pose a risk to the safety of others." *Id.*

Without delineating the conditions of release that the Court considered, the Order summarily concludes that the government has met its burden to prove by clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the safety of the community.

D.   Law and Argument

The Sixth Circuit has not squarely addressed the proper standard of review of a Magistrate Judge's order of detention. *United States v. Koubriti*, 2001 U.S. Dist. LEXIS 19823, *15 (E.D. Mich., October 16, 2001). District courts within the Sixth Circuit, including this Court, have adhered to a requirement of *de novo* review. *Id. citing to United States v. Yamini*, 91 F.Supp.2d 1125, 1130 (S.D. Ohio 200); *United States v. Williams*, 948 F.Supp. 692, 693 (E.D. Mich. 1996) and *United States v. Alexander*, 742 F.Supp. 421, 423 (N.D. Ohio 1990).

> Among the circuits, *de novo* review of detention orders issued by magistrate judges also appears to be the majority view. *See e.g. United States v. Gonzalez*, 149 F.3d 1192, 1998 WL 321218 (10th Cir. 1998); *United States v. Clark,* 865 F.2d 1433, 1436 (4th Cir. 1989); *United States v. Hurtado*, 779 F.2d 1457, 1481 (11th Cir. 1985); *United States v. Leon*, 766 F.2d 77, 80 (2nd Cir. 1985)(on a motion for revocation or amendment of a detention order, district court should not simply defer to the judgment of the magistrate, but should reach its own independent conclusion); *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir. 1985)(district court should make an "independent determination" of the defendant's eligibility for release).

The factors which the Court must consider in making this determination are set forth in §3142(g) as follows:

(1)   the nature and circumstances of the offense charged;

    (2)    the weight of the evidence against the defendant;

    (3)    the history and characteristics of the defendant, including:

        (A)    the person's character, physical and mental condition, family ties, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B)    Whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Title 18 U.S.C. §3142(j) further provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence."

Title 18 U.S.C. §3142(c)(1) mandates release subject to specific conditions, which must be the least restrictive necessary to reasonably assure the defendant's appearance and the safety of the community. The statute lists 14 conditions which the Court may impose, including "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." Title 18 U.S.C. §3142(c)(1)(B)(i-xiv).

The government carries the burden to prove dangerousness by clear and convincing evidence. Title 18 U.S.C. §3142(f)(2)(B). Where there is probable cause to believe the person committed an offense under Title 21 U.S.C. §841, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community.

However, the presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)(citations omitted).

> A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes*, 254 F.3d at 436. Although a defendant's burden of production "is not heavy," he must introduce at least some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").

*Id*. Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can reasonably assure the safety of the community and that the defendant will appear. *Id*. at 946. In this case, the Magistrate Judge determined that the Defendant rebutted the presumption in favor of detention.

In *United States v. Yamini*, 91 F.Supp. 2d 1125, 1127-1131 (S.D. Ohio 2000), the court stated:

> §3145(b) "requires a progression from one choice to the next in a judicial officer's determination of whether pretrial detention is called for." The court reasoned that §3142 required the judicial officer first to determine whether release on personal recognizance or an unsecured bond is proper and then to consider progressively more restrictive conditions of release – all before reaching the determination that detention is the only means reasonably to assure the defendant's appearance or the safety of others. The court concluded that meaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under §3142 as the magistrate judge.

*Yamini*, 91 F.Supp.2d at 1128-1129 (citation omitted).

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *United States v. Dominquez*, 782 F.2d 72, 707 (7th Cir. 1986).

8

Even if the presumption is not rebutted, a judge may not detain a defendant "based on evidence that he has been a danger in the past[.]" *Id*. Instead, past dangerous conduct is relevant only to the extent that the government can prove – by clear and convincing evidence – that the defendant is "likely to continue to engage in criminal conduct undeterred [] by … release conditions." *Id*. Even when a defendant is charged with a serious crime and has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community.

A review of the Section 3142(g) factors in this case demonstrates that Brian Johnson does not represent a continuing danger to the community.

 1. <u>The Nature and Circumstances of the Offense</u>

While the offenses charged are serious, they do not represent the most serious of potential offenses under Title 21 U.S.C. 841. They do <u>not</u> involve any violence and there was no evidence presented that Mr. Johnson simultaneously possessed a firearm and a controlled substance. He has not be charged with possessing, carrying or using a firearm during or in furtherance of a controlled substance offense. When he was arrested, he was cooperative and made no attempt to flee. He was not found to be in possession of any firearms or controlled substances. He was not on probation, parole or other release at the time of the alleged offenses.

 2. <u>The Weight of the Evidence Against the Defendant</u>

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (2010), citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Further, in cases involving multiple defendants who are not necessarily similarly situated, "the dangerousness

inquiry must be an individualized one. Just as at trial, in which courts and juries must resist the urge to find guilt or innocence by association, each defendant is entitled to an individualized determination of bail eligibility." *Id.* at 946.

3. Johnson's History and Characteristics

Brian's history and characteristics, which were detailed during the detention hearing, weigh heavily in favor of pretrial release. He is a lifelong member of the community, has the support of his family, has a stable residence, and has stable employment. His last criminal conviction occurred in 2018, more than five (5) years ago.

4. The Nature and Seriousness of the Danger to the Community

In *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987), the Supreme Court noted that detention is usually reserved for "extremely serious offenses" where the facts of the case demonstrate an "overwhelming" governmental interest. It is not enough that the government show probable cause that the defendant committed the crime charged. "In a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Id.* 750-751.

Brian's history and characteristics, including his conduct upon his arrest weigh against any current danger to the community. The danger to the community analysis is one which requires the court to predict whether the defendant is likely to engage in the type of criminal conduct alleged if released.

> The court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, in cases like this where there is no evidence of violence, the court must *predict* whether defendant is likely to engage in drug trafficking if released pending trial. *citing Perry*, 788 F.2d at 114. ("[T]he dangerousness determination involves a prediction of the detainee's likely

10

future behavior[,] i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." (*Id*. at 114).

*United States v. Hernandez-Bourdier*, 2017 U.S. Dist. LEXIS 1154 at \*24-25 (W.D. Pa., January 5, 2017)(emphasis in original).

Just as in *Hernandez-Bourdier*, there is no clear and convincing evidence of dangerousness here. Contrary to the Detention Order, there was no evidence that Mr. Johnson "mix[ed] weapons and drugs." He has had stable employment, relationships and has been a productive member of society. He was cooperative with law enforcement. He was not on probation, parole or other release at the time of the alleged offenses. He was not in possession of drugs or a firearm upon his arrest. The government did not carry its burden of persuasion to establish clear and convincing evidence of dangerousness sufficient to require detention based solely on the current charges, his prior violations of supervision and non-felony convictions for contempt of court and escape.

Further, there are multiple conditions of release which would adequately protect against any risk that Brian would engage criminal conduct while on pretrial release, including but not limited to:

- Placing Mr. Johnson him in the custody of his long-time girlfriend and fiancée, Kadeisha Larry, "who agrees to assume supervision and to report any violation of a release condition to the court" §3142(c)(1)(B)(i)
- Maintaining his employment
- Following restrictions on "personal associations, place of abode or travel" including home detention with electronic monitoring or residence at a halfway house or community corrections center §3142(c)(1)(B)(iv)

11

- Report to Pretrial Services on a regular basis §3142(c)(1)(B)(vi)

- Comply with a curfew §3142(c)(1)(B)(vii)

- Refrain from possessing a "firearm, destructive device, or other dangerous weapon" §3142(c)(1)(B)(viii)

- Refrain from excessive use of alcohol §3142(c)(1)(B)(ix)

- Refrain from "any use of a narcotic drug or other controlled substance … without a prescription" §3142(c)(1)(B)(ix)

- Undergo "medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency." §3142(c)(1)(B)(x)

- Post a bail bond with solvent sureties" §3142(c)(1)(B)(xii)

- Any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community §3142(c)(1)(B)(xiv)

The Order of Detention in this case does not reflect that the Court considered and rejected any of the foregoing conditions that it could impose to reasonably assure the safety of the community. Rather, the Order concludes that Mr. Johnon's prior supervised release violations and non-felony contempt of court and escape convictions "raise concerns" about his willingness to comply with any conditions of release that the court might impose.

Brian has a significant, compelling interest to comply with these and any conditions of release that the Court imposes – his health, his children, his home and his relationships. There is no basis to believe that he would be unable or unwilling to comply with the Court's conditions of release.

E. <u>Conclusion</u>

For the foregoing reasons, Mr. Johnson respectfully submits that the Magistrate Judge erroneously determined that the government met its burden to prove by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of the community. Mr. Johnson therefore respectfully requests that the Court revoke the Order of Detention and order that he be released to the custody of Kadeisha Larry and to impose the conditions of home detention with electronic monitoring, substance abuse assessment and treatment and mental health assessment and treatment, which conditions will reasonably assure the safety of the community and Mr. Johnson's appearance.

Respectfully submitted,

s/ Joan E. Pettinelli
Joan E. Pettinelli (OH 0047171)
Pettinelli Law LLC
PO Box 33909
North Royalton, OH 44133
(216) 410-8512 (telephone)
joanepettinelli@wfblaw.com

13